UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEBER D. PERRETT,<br><br>　　　　Appellant,<br><br>　v.<br><br>CLARENCE L. GUNTER, et al,<br><br>　　　　Appellees. | DISTRICT COURT CASE<br>NO. CIV-F-06-1892 AWI<br><br>BANKRUPTCY COURT CASE<br>NO. 05-16471 A-13F<br><br>ADVERSARY PROCEEDING<br>NO. 05-01264<br><br>ORDER RE: APPEAL |

　　　Appellant Perrett seeks appeal of Bankruptcy Judge Whitney Rimel's December 1, 2006 order granting Appellees' motions for summary judgment.

**I. History**

　　　Appellant Heber Perrett ("Perrett") is a landowner who leased farmland to Gunter Bros. & Sons, a California partnership. The members of the partnership are Lawrence, Clarence L., Roy, Warren, David, and Carol Gunter ("Gunters"[1]). On July 9, 1997, the Gunters filed suit against Perrett in Superior Court, County of Madera, alleging breach of a lease provision. Robert Rosati ("Rosati") was the attorney that represented the Gunters in the state court case. Perrett

---

[1]The term "Gunters" will be used flexibly in this order to refer to all six partners as well as subsets of that group.

filed a cross complaint, alleging various causes of action.  A bench trial was held from April 17 to April 24, 2000.  On May 22, 2000, the Superior Court issued a tentative decision awarding Perrett $15,289.51 for a breach of the implied covenant of good faith and fair dealing.  The Gunters appealed that decision.  On September 12, 2000, the Superior Court awarded Perrett $53,930.25 in attorney's fees and $4,873.54 in costs.  The Gunters paid the amounts awarded to Perrett while appealing the Superior Court's orders.  On March 4, 2002, the Court of Appeal for the State of California, Fifth Appellate District issued an order reversing the Superior Court's rulings, and remanded for further proceeding consistent with the opinion.  The Gunter's were granted costs on appeal.

The Superior Court ordered Perrett to make restitution and to repay the Gunters the amount awarded ("Restitution Order").  On September 5, 2002, the Superior Court fixed the amount of restitution at $79,592.90 to take into account interest.  Perrett thereafter appealed the Restitution Order to the Court of Appeal.  In lieu of an appeal bond, Perrett made a deposit of $110,000.00 ("Deposit") with the Superior Court on September 12, 2002.  Rosati filed a lien for his fees (totaling $18,159.73 at the time) against the Deposit on January 10, 2003.

On January 21, 2003, the Superior Court accepted additional evidence in accordance with the Court of Appeal's opinion.  Meanwhile David Gunter filed for Chapter 7 bankruptcy on April 16, 2003.  The case against him was subject to an automatic stay.  On August 6, 2003, the Superior Court issued a second judgment, finding Perrett the prevailing party in the case, entitled to attorney's fees and costs; the judgment did not award Perrett any substantive damages.  On October 10, 2003, the Superior Court fixed the amount of attorney's fees at $86,804.00.  On December 2, 2003, the August 6, 2003 judgment was restated, specifying $86,804.00 in attorney's fees and $4,564.00 in costs.

As David Gunter had filed for bankruptcy prior to the entry of these orders, the judgment does not apply to him.  Warren Gunter filed for Chapter 7 bankruptcy on December 31, 2003.  Roy, Clarence, and Larry Gunter filed for Chapter 7 bankruptcy on January 9, 2004.  Carol Gunter did not file for bankruptcy.  On July 19, 2004, the Court of Appeal affirmed the Restitution Order and granted costs on appeal to the Gunters.  As far as can be determined, the

Deposit is still in the possession of the Superior Court.

The Chapter 7 Trustees of the five Gunter bankruptcies ("Trustees") filed an adversary proceeding on August 5, 2005 to determine the claims Perrett and Rosati had on the bankruptcy estates, particularly the Deposit. On August 15, 2006, the Trustees filed a motion for summary judgment, seeking to have five-sixth (5/6) of the Deposit declared property of the bankruptcy estates and to disallow any form of offset or setoff under 11 U.S.C. §553. On August 16, 2006, Rosati also filed a motion for summary judgment, seeking to have his lien on the Deposit recognized. The Trustees and Rosati did not oppose each others' motions. Perrett opposed both. A hearing before Judge Rimel was held on September 13, 2006. Judge Rimel held a second hearing on November 28, 2006 to read findings of fact and conclusions of law into the record. Written orders granting the two summary judgment motions were entered on December 1, 2006.

Perrett appealed the December 1, 2006 order. By request of the Trustees, the appeal was sent to district court instead of the bankruptcy appellate panel.

## II. Legal Standards

A district court reviews de novo a bankruptcy court's conclusions of law. Paulman v. Gateway Venture Partners III, 163 F.3d 570, 575 (9th Cir. 1998). Findings of fact by the bankruptcy judge shall not be disturbed unless they are clearly erroneous. Fed. R. Bankr. Proc. 8013. "Mixed questions of law and fact are reviewed de novo. Such a question arises when the historical facts are established, the rule of law is undisputed, and the issue is whether the facts satisfy the legal rule." In re OTA, 179 B.R. 149, 155 (B.A.P. 9th Cir. 1995).

"As a general rule, [a reviewing court] will not consider an issue raised for the first time on appeal, although we have the power to do so. This circuit has recognized three exceptions to this rule: in the 'exceptional' case in which review is necessary to prevent a miscarriage of justice or to preserve the integrity of the judicial process, when a new issue arises while appeal is pending because of a change in the law, or when the issue presented is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed. If one of the exceptions is applicable, we have discretion to address the issue."

Bolker v. Commissioner, 760 F.2d 1039, 1042 (9th Cir. 1985), citations omitted.  This general rule may apply to arguments as well. See Peterson v. Highland Music, 140 F.3d 1313, 1321 (9th Cir. 1998).

### III. Discussion

Perrett's questions on appeal are "whether the Bankruptcy Court erred in adjudging that the cash deposit in lieu of bond (or 'Undertaking') including principal and all accrued interest, was property of the bankruptcy estates of Debtors, and whether the Bankruptcy Court erred in ordering the Undertaking be transferred to the trustees for Debtors' bankruptcy estates." Doc. 10, Perrett's Opening Brief, at 2:9-13.  In summarizing the motions before her, Judge Rimel concluded "the two primary issues really are, is the Gunters' interest in this cash deposit property of the bankruptcy estate of this bankruptcy case, of all these bankruptcy cases...and second, does the Court have jurisdiction to make that determination, and third, what about Mr. Rosati's lien, is it a lien on this property." Record on Appeal Item 66, November 28, 2006 Transcript, at 5:2-9. Perrett appeals only the first issue; the court interprets the issues on appeal to encompass neither the bankruptcy court's jurisdiction nor the status of Rosati's lien.[2]  Perrett makes two arguments in regard to ownership of the Deposit: (1) title or ownership of the Deposit never passed to the Gunters and (2) even if it did, Perrett is entitled to an offset based on the August 6, 2003 Superior Court judgment in his favor on the underlying lease dispute.

---

[2] In an earlier filing, Perrett listed two additional questions on appeal: "Whether the Bankruptcy Court erred in adjudging that Robert J. Rosati had a properly created an enforceable attorney's lien to be given super priority status upon recovery of Appellant's Undertaking to be paid thereafter from Appellant's Undertaking. Whether the Bankruptcy Court erred in signing and entering two judgments to dispose of a single adversary action." Doc. 6, Amended Designation of Items to be Included in the Record and Statement of Issues to be Presented, at 8:1-6.  However, in the section entitled "Statement of Issues on Appeal and Applicable Standards of Review" of Perrett's opening brief, there is no mention of these two bases for appeal.  Perrett makes no arguments regarding Rosati's lien or the two judgments in either the opening or reply briefs.  The court considers these two grounds to be abandoned.

**B. Waiver of the Appeal Grounds**

The Trustee and Rosati discuss the merits, but also argue that Perrett has raised arguments on appeal that were not presented to Judge Rimel. See Doc. 11, Trustee's Brief, at 3; Doc. 15, Rosati's Brief, at 8:6-8.  Regarding ownership of Deposit, Judge Rimel did specifically note, "the question that Mr. Perrett I didn't see focus on that much in his brief was the whole question of who is entitled to the funds in the restitution account, the funds in question, given that Mr. Perrett eventually prevailed." Record on Appeal Item 65, September 13, 2006 Transcript, at 5:17-20.  Colloquy between Judge Rimel and Perrett's counsel demonstrates that Perrett challenged the bankruptcy courts jurisdiction over the Deposit (as property of the bankruptcy estate) and portrayed the issue as one of pure law. Record on Appeal Item 65, September 13, 2006 Transcript, at 10:8-24.  In making her oral findings of fact and conclusions of law, Judge Rimel clearly stated, "Jurisdiction over all property of the debtor and property of the estate necessarily includes jurisdiction to make a decision about whether the property in question is property of the bankruptcy estate and/or property of the debtor....There's nothing before the Court that would indicate that this is not property of the bankruptcy estate. Property of the bankruptcy estate is comprised of all legal or equitable interests of the debtor in property as of the commencement of the case. As of the commencement of this case, these debtors had legal and equitable interests in this cash deposit, and this cash deposit is property of these bankruptcy estates." Record on Appeal Item 66, November 28, 2006 Transcript, at 5:20-6:15.  At the hearing, Judge Rimel stated, "I did read the exhibits, both decisions of the Court of Appeals, and it looked to me as though the - it looked to me as though it was pretty clear the Court of Appeals in the second decision on the appeal of the order for restitution made it clear that regardless of who prevailed at the end of the day, as long as the restitution was affirmed, those funds went to the Gunters." Record on Appeal Item 65, September 13, 2006 Transcript, at 5:21-6:2.  All relevant arguments concerning ownership were made before Judge Rimel regarding ownership.

In contrast, Perrett never actually presented his offset arguments in bankruptcy court. Judge Rimel stated, "Perrett argues that he should have an offset, but he hasn't come up with any facts that would allow the Court to make a determination that an offset is allowable based on his

subsequent judgment." Doc. 21, Ex. 1, November 8, 2006 Transcript, at 6:5-8.  From the record, the court gathers that Perrett only raised the issue of offset as a counterclaim to the adversary action. See Doc. 15, Part 4, Perrett's Answer and Counterclaim, at 6:9-11 ("the claim of the Debtors and his co-plaintiffs in the Underlying Action with respect to the Cash Deposit is offset by the second judgment").  The only discussions of setoff presented to Judge Rimel are contained in the Trustees' and Rosati's motions for summary judgment.  "*Although he has yet to articulate it in this case*, Mr. Perrett's offset claim, if any he has, would be an assertion that his judgment for fees and costs, which became final as an appealable order on December 2, 2003, should be offset against the restitution order. The problem with that position would be that the offset arose within the 90 day period before the filing of the Warren, Larry, Clarence, and Roy Gunter bankruptcy petitions." Doc. 10, Part 2, Ex. 9, Trustees' Summary Judgment Brief, at 7:4-8, emphasis added.  "Perrett claims that his subsequent judgment is a setoff against the trustees' interest, at least in part....The other Gunters filed bankruptcy less than 90 days after the modified judgment; therefore, the modified judgment is a preference as to their interests and cannot be claimed by Perrett as part of a setoff." Record on Appeal Item 33, Rosati's Summary Judgment Brief, at 2:12-17.  Perrett did not address setoff at all in his opposition briefs. See Doc. 12, Parts 6 and 7, Perrett's Opposition to Trustees' Summary Judgment Motion and Perrett's Opposition to Rosati's Summary Judgment Motion.  Similarly, Perrett's counsel did not raise the issue of offset at the September 13, 2006 hearing.  Now in district court, Perrett's counsel argues that the 90 day prepetition exception to setoff does not apply. Doc. 10, Perrett's Opening Brief, at 7:16-8:19.  Perrett did not make this argument to Judge Rimel in either writing or at the hearing.  The court declines to take up this argument, raised for the first time on appeal.

**B. Title or Ownership of the Deposit**

Judge Rimel concluded the Deposit belonged to the Gunters: "There's nothing before the Court that would indicate that this is not property of the bankruptcy estate. Property of the bankruptcy estate is comprised of all legal or equitable interests of the debtor in property as of the commencement of the case. As of the commencement of this case, these debtors had legal and

equitable interests in this cash deposit, and this cash deposit is property of these bankruptcy estates." Record on Appeal Item 66, November 28, 2006 Transcript, at 6:9-15.  On September 5, 2002, the Superior Court issued an order directing Perrett to pay the Gunters $79,592.90 plus 10% statutory interest. Doc. 10, Ex. 3.  Perrett appealed the Restitution Order and posted a deposit of $110,000 in lieu of an appeal bond.  In his filing accompanying the Deposit, Perrett stated, "If the [Restitution] Order is affirmed, in full or in part, by the Court of Appeal, Appellant agrees that the Clerk of the Court is authorized to collect, sell, or otherwise apply the deposit to enforce the liability of the Appellant on the deposit, pursuant to CCP §995.750 to GUNTER. The funds shall be distributed as prescribed in CCP §995.760(c). In the event the Order is reversed on appeal, the money deposited, plus all accrued interest, shall be returned to Appellant." Doc. 10, Ex. 4, Appellant's Notice and Agreement Regarding Deposit in Lieu of Bond, at 2.  The Superior Court formally endorsed the Deposit as "a sufficient Deposit in Lieu of Bond with regards to the pending Appeal of the Order Re: Restitution." Doc. 10, Ex. 4, Order Regarding Appellant's Deposit in Lieu of Bond, at 1.

On appeal, the Court of Appeal concluded, "The order for restitution is affirmed. Costs are awarded to respondents [Gunters]." Doc. 10, Ex. 8, July 19, 2004 Court of Appeal Order, at 8.  The Court of Appeal signaled its intention to give effect to the terms of Appellant's [Perrett's] Notice and Agreement Regarding Deposit in Lieu of Bond: "Appellant contends the appeal is now moot. The appeal is not moot because appellant's agreement regarding deposit in lieu of bond provides that affirmance of the order for restitution, in whole or in part, shall result in payment of the deposit as necessary to satisfy the order for restitution. Dismissal of the appeal results in affirmance of the order." Doc. 10, Ex. 8, July 19, 2004 Court of Appeal Order, at 3. Judge Rimel correctly concluded, "the Court of Appeals in the second decision on the appeal of the order for restitution made it clear that regardless of who prevailed at the end of the day, as long as the restitution was affirmed, those funds went to the Gunters." Record on Appeal Item 65, September 13, 2006 Transcript, at 5:23-6:2. Perrett himself argues that, "A deposit in lieu of bond, or any other type of bond, and the interest thereon, is owned by the Court into which it is deposited as a trustee for the person ultimately determined by the court to be entitled to receive

the money from it; such determination relates back to the time of the initial deposit of the fund in court." Doc. 10, Perrett's Opening Brief, at 5:27-6:3, citations omitted.  Thus, ownership of the Deposit properly passed to the Gunters.[3]  When the Gunters (excepting Carol Gunter) filed for bankruptcy, the Deposit (or rather five-sixth of it) was properly adjudged to be property of the various bankruptcy estates.

Perrett claims ownership never passed to the Gunters as they were not the prevailing parties in the case.  His argument conflates the legal proceedings of the underlying lease dispute with the appeal of the restitution order: "[the Deposit] is owned by the Court into which it is deposited as a trustee for the person ultimately determined by the court to be entitled to receive the money from it....The court, ultimately, determined that Appellant was entitled to an award of attorneys' fees and costs." Doc. 10, Perrett's Opening Brief, at 5:28-6:7, citations omitted.  Review of this case's history demonstrates that the Court of Appeal treated the two matters separately.  Perrett paid the Deposit to the Superior Court to appeal the restitution order, not the underlying lease dispute.  While Perrett was awarded attorney's fees and costs in the underlying lease dispute, the Court of Appeal actually granted costs to the Gunters on the appeal of the restitution order.

### IV. Order

Judge Rimel's December 1, 2006 Order is AFFIRMED.

IT IS SO ORDERED.

**Dated:   January 11, 2008**           /s/ Anthony W. Ishii
                                        UNITED STATES DISTRICT JUDGE

---

[3] The Court of Appeal also stated, "We suspect appellant, having obtained a judgment in his favor in the second trial of the main action, has filed or will attempt to file a judgment lien against respondents' interest in appellant's deposit held by the clerk. The disposition of such a claim is not before us and we express no opinion on the rights of the parties to the deposit." Doc. 10, Ex. 8, July 19, 2004 Court of Appeal Order, at 7-8.  The court does not consider the comment to refer to ownership of the Deposit, but rather to the merits of a judgment lien.