UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEBER D. PERRETT,<br><br>        Appellant,<br><br>v.<br><br>CLARENCE L. GUNTER, et al,<br><br>        Appellees. | DISTRICT COURT CASE<br>NO. CIV-F-06-1892 AWI<br><br>BANKRUPTCY COURT CASE<br>NO. 05-16471 A-13F<br><br>ADVERSARY PROCEEDING<br>NO. 05-01264<br><br>ORDER RE: MOTION FOR REHEARING |

### I. History

Appellant Heber Perrett ("Perrett") is a landowner who leased farmland to Gunter Bros. & Sons, a California partnership. The members of the partnership are Lawrence, Clarence L., Roy, Warren, David, and Carol Gunter ("Gunters"[1]). On July 9, 1997, the Gunters filed suit against Perrett in Superior Court, County of Madera, alleging breach of a lease provision. Robert Rosati ("Rosati") was the attorney that represented the Gunters in the state court case. Perrett filed a cross complaint, alleging various causes of action. A bench trial was held from April 17 to April 24, 2000. On May 22, 2000, the Superior Court issued a tentative decision awarding

---

[1] The term "Gunters" will be used flexibly in this order to refer to all six partners as well as subsets of that group.

Perrett $15,289.51 for a breach of the implied covenant of good faith and fair dealing. The Gunters appealed that decision. On September 12, 2000, the Superior Court awarded Perrett $53,930.25 in attorney's fees and $4,873.54 in costs. The Gunters paid the amounts awarded to Perrett while appealing the Superior Court's orders. On March 4, 2002, the Court of Appeal for the State of California, Fifth Appellate District issued an order reversing the Superior Court's rulings, and remanded for further proceeding consistent with the opinion. The Gunters were granted costs on appeal.

The Superior Court ordered Perrett to make restitution and to repay the Gunters the amount awarded ("Restitution Order"). On September 5, 2002, the Superior Court fixed the amount of restitution at $79,592.90 to take into account interest. Perrett thereafter appealed the Restitution Order to the Court of Appeal. In lieu of an appeal bond, Perrett made a deposit of $110,000.00 ("Deposit") with the Superior Court on September 12, 2002. Rosati filed a lien for his fees (totaling $18,159.73 at the time) against the Deposit on January 10, 2003.

On January 21, 2003, the Superior Court accepted additional evidence in accordance with the Court of Appeal's opinion. Meanwhile David Gunter filed for Chapter 7 bankruptcy on April 16, 2003. The case against him was subject to an automatic stay. On August 6, 2003, the Superior Court issued a second judgment, finding Perrett the prevailing party in the case, entitled to attorney's fees and costs ("Second Judgment"); the judgment did not award Perrett any substantive damages. On October 10, 2003, the Superior Court fixed the amount of attorney's fees at $86,804.00. On December 2, 2003, the August 6, 2003 judgment was restated, specifying $86,804.00 in attorney's fees and $4,564.00 in costs.

As David Gunter had filed for bankruptcy prior to the entry of these orders, the judgment does not apply to him. Warren Gunter filed for Chapter 7 bankruptcy on December 31, 2003. Roy, Clarence, and Larry Gunter filed for Chapter 7 bankruptcy on January 9, 2004. Carol Gunter did not file for bankruptcy. On July 19, 2004, the Court of Appeal affirmed the Restitution Order and granted costs on appeal to the Gunters.

The Chapter 7 Trustees of the five Gunter bankruptcies ("Trustees") filed an adversary proceeding on August 5, 2005 to determine the claims Perrett and Rosati had on the bankruptcy

estates, particularly the Deposit.  On August 15, 2006, the Trustees filed a motion for summary judgment, seeking to have five-sixth (5/6) of the Deposit declared property of the bankruptcy estates and to disallow any form of offset or setoff under 11 U.S.C. §553.  On August 16, 2006, Rosati also filed a motion for summary judgment, seeking to have his lien on the Deposit recognized.  The Trustees and Rosati did not oppose each others' motions.  Perrett opposed both. A hearing before Judge Rimel was held on September 13, 2006.  Judge Rimel held a second hearing on November 28, 2006 to read findings of fact and conclusions of law into the record. Written orders granting the two summary judgment motions were entered on December 1, 2006.

      Perrett appealed the December 1, 2006 order.  By request of the Trustees, the appeal was sent to district court instead of the bankruptcy appellate panel.  This court issued an order denying the appeal on January 15, 2008.  Perrett has filed a motion for rehearing.  Rosati has filed a late statement of formal opposition to the motion without providing any briefing or argument; the Trustees have made no response.  The matter was taken under submission without benefit of oral argument.

## II. Legal Standards

      "[A] motion for rehearing may be filed within 10 days after entry of the judgment of the district court or the bankruptcy appellate panel." Fed. R. Bankr. Proc. 8015.  As the Ninth Circuit has recognized, "Fed. R. Bankr. P. 8015, which grants a party the right to file a motion for rehearing but does not explicitly provide a standard for granting such a motion" going so far as to suggest that lower courts have discretion in choosing a standard of review for these motions. United States v. Fowler, 394 F.3d 1208, 1214 (9th Cir. 2005) ("Other bankruptcy courts have applied different standards, but the inquiry here is whether the district court abused its discretion").  Some courts have considered these to be motions for reconsideration. See Decker v. Tramiel, 2007 U.S. Dist. LEXIS 35507, *2 (N.D. Cal. 2007); Shawnee State Bank v. First Nat'l Bank, 202 B.R. 512, 517 (D. Kan. 1996) ("will reconsider its previous order to determine if there is an intervening change in the controlling law or it becomes necessary to remedy a clear error of law or to prevent obvious injustice").  Other courts have applied a standard derived from Fed. R.

App. Proc. 40. See Salas v. McGranahan, 2006 U.S. Dist. LEXIS 85686, *1-2 (E.D. Cal. 2006); Kosmala v. Imhof, 295 B.R. 372, 375 (B.A.P. 9th Cir. 2003). As the Ninth Circuit has approved of reliance on Fed. R. App. Proc. 40, this court follows suit. United States v. Fowler, 394 F.3d 1208, 1214 (9th Cir. 2005).

"The petition must state with particularity each point of law or fact that the petitioner believes the court has overlooked or misapprehended and must argue in support of the petition." Fed. R. App. Proc. 40(a)(2). "A properly drawn petition for rehearing serves a very limited purpose....[it is] For the sole purpose of directing the attention of the court to some controlling matter of law or fact which a party claims was overlooked in deciding a case." Anderson v. Knox, 300 F.2d 296, 297 (9th Cir. 1962), citations omitted. "A petition for rehearing was not designed to be a crutch for dilatory counsel, nor, in the absence of a demonstrable mistake, to permit reargument of the same matters." Personal Elec. Transps., Inc. v. Office of the U.S. Trustee, 2007 U.S. Dist. LEXIS 59258, *4 (D. Haw. 2007), citations omitted.

### III. Discussion

As the parties are aware, the procedural posture of this motion is convoluted and unclear. Perrett states, "the title of this motion is somewhat confusing, since a hearing was never held on the instant appeal. However, Appellant seeks the Court's reconsideration of and hearing on an issue regarding the Court's Order." Doc. 29, Perrett's Brief, at 2:3-5. Following Fed. R. App. Proc. 40, a motion for rehearing seeks only that, rehearing at which time the order is to be reconsidered. As no timely opposition was filed, Perrett requested that "this Court, in the absence of argument in opposition, grant the relief requested in the Motion." Doc. 30, Perrett's Reply, at 3:3-4. The express terms of Fed. R. App. Proc. 40 forbid a filing of opposition except by invitation of the court. Fed. R. App. Proc. 40(a)(3), ("Unless the court requests, no answer to a petition for panel rehearing is permitted"). The fact that no timely opposition was filed is of no import; the court will review the motion on its merits. See Davis v. Brown, 1997 U.S. Dist. LEXIS 19857, *1 (N.D. Cal. 1997).

In the original appeal, Perrett made two arguments: (1) ownership of the Deposit never

passed to the Gunters and (2) even if it did, Perrett is entitled to an offset based on the Second Judgment.  In the January 15, 2008 Order, the court determined that (1) ownership of the Deposit did pass to the Gunters and (2) Perrett waived the offset issue by failing to argue it before Judge Rimel.  Perrett frames the request for rehearing as follows: "An issue remains unaddressed by the Court as to whether the funds awarded to four of the five bankruptcy estates allows the bankruptcy estates of Warren, Roy, Clarence and Larry Gunter have succeeded to a greater property interest than that held by the debtors....the District Court did not address the issue as to whether or not four of the estates were properly awarded their share of the Deposit in Lieu of Bond considering the fact that the debtors would never have received the money had they not filed for bankruptcy, resulting in the Trustees (meaning the estates) being placed in a better position that the debtors." Doc. 29, Appellant's Brief, at 2:26-3:8.  Perrett specifically states, "This issue is distinct from the issue of 'set off' which the Court, in its discretion, declined to consider...This issue regards whether or not the Debtors' title was ever more than illusory." Doc. 29, Perrett's Brief, at 5:27-6:2.  Perrett believes the January 15, 2008 Order was insufficiently clear on this point; to clarify the fact that these arguments were considered, the court now deals with them directly.

As stated in the previous order, ownership over the Deposit passed to the Gunters.  In his filing accompanying the Deposit, Perrett stated, "If the [Restitution] Order is affirmed, in full or in part, by the Court of Appeal, Appellant agrees that the Clerk of the Court is authorized to collect, sell, or otherwise apply the deposit to enforce the liability of the Appellant on the deposit, pursuant to CCP §995.750 to GUNTER. The funds shall be distributed as prescribed in CCP §995.760(c). In the event the Order is reversed on appeal, the money deposited, plus all accrued interest, shall be returned to Appellant." Doc. 10, Ex. 4, Perrett's Notice and Agreement Regarding Deposit in Lieu of Bond, at 2.  On appeal, the Court of Appeal concluded, "The order for restitution is affirmed. Costs are awarded to respondents [Gunters]." Doc. 10, Ex. 8, July 19, 2004 Court of Appeal Order, at 8.  As Perrett himself argued, "A deposit in lieu of bond, or any other type of bond, and the interest thereon, is owned by the Court into which it is deposited as a trustee for the person ultimately determined by the court to be entitled to receive the money from

5

it; such determination relates back to the time of the initial deposit of the fund in court." Doc. 10, Perrett's Opening Brief, at 5:27-6:3, citations omitted.  The Fifth District Court of Appeal found in favor of the Gunters in the appeal of the Restitution Order.  Thus, ownership of the Deposit passed to the Gunters, or rather, their bankruptcy estates.

Though Perrett disclaims any intention of re-raising the offset issue, he does so by arguing the Gunters' title to the Deposit was never more than illusory as it must be considered in light of the Second Judgment.  "While the Restitution Order may have stated that the Deposit in Lieu of Bond should pass to the Debtors, the Debtors had already been ordered to pay Appellant more than they were entitled to under that Restitution Order before it was affirmed. Essentially, the Restitution Order, regardless of its disposition, was wiped out by the award made to Appellant...The Fifth District Court of Appeal may have determined that the restitution order was not moot as a matter of law, but it had become an academic exercise." Doc. 29, Perrett's Brief, at 6:6-14.  That line of reasoning is simply an argument for offset without the formal title.  As stated before, Perrett did not adequately raise and argue this issue before Judge Rimel, and the court declines to exercise its discretion to address new issues on appeal.  Perrett argues "the debtors would never have received the money had they not filed for bankruptcy, resulting in the Trustees (meaning the estates) being placed in a better position than the debtors." Doc. 29, Perrett's Brief, at 3:6-8.  As a practical matter, Perrett may well be right that the Gunters would never have actually received the Deposit; the Second Judgment would likely have been offset against the Deposit in a mutual discharge of obligations.  However, as a matter of law, the two obligations existed separately and must be treated so.  The Gunters (or their bankruptcy estates) had ownership of the Deposit once the Court of Appeals found in their favor.  The Gunters (or their bankruptcy estates) owed Perrett the amount of the Second Judgment once the Superior Court so ruled.  Bankruptcy law intervened to curtail repayment of the Second Judgment; it did not change legal ownership of the Deposit.  The bankruptcy estates are in a better position than the Gunters because debts can be discharged in bankruptcy, not because the estates have any superior claim to the Deposit.

Making an argument sounding in equity, Perrett portrays this as a situation where

"Appellant is subject to more than the ordinary risk of another's bankruptcy, *which would wipe out or reduce an award gained in court*." Doc. 29, Appellant's Brief, at 6:28-7:2, emphasis added.  Review of Perrett's own Timeline of Events demonstrates that "wipe out" of a court award is precisely what happened: "On June 30, 2000, Appellant obtains judgment in Superior Court against Debtors and *levies judgment against property of debtors*....On September 5, 2002, Superior Court orders restitution in favor of Debtors and other plaintiff in amount of $79,592.90.  On September 12, 2002, Appellant deposits $110,000.00 cash deposit in lieu of bond with Clerk of Superior Court." Doc. 29, Appellant's Brief, at 4:21-5:4, emphasis added.  Thus, forfeiting the Deposit to the Gunters simply left the situation status quo ante,[2] reversing the judgment previously collected.  Appellant's contention this is a case where the court is saying "congratulations, you won, now pay up" is not supported.  The net effect of the state court litigation (Perrett's collection of judgment against the Gunters followed by post of Deposit which now goes to the Trustees) is essentially a wash.

### IV. Order

Appellant Perrett's motion for rehearing is DENIED.

IT IS SO ORDERED.

**Dated:   March 21, 2008**                    /s/ **Anthony W. Ishii**
                                               UNITED STATES DISTRICT JUDGE

---

[2]The Deposit totaled $110,000.  The initial judgment in Perrett's favor was for $15,289.51 with an additional $53,930.25 in attorney's fees and $4,873.54 in costs.  When its order was reversed and remanded, the amount of restitution the Superior Court ordered was $79,592.90.  Though there is a significant difference in the amounts (Deposit vs. restitution), the two must be considered equal as the Deposit was in lieu of paying restitution.